*919 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
L This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, M. Randall Donald, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
By way of background, in 2003, Timothy Mims obtained an $18,800 judgment against Cynthia DeLaSalle, which resulted in a lien against her home. In 2004, Ms. DeLaSalle filed for bankruptcy, and Mr. Mims’ judgment was discharged in the bankruptcy proceedings. Nevertheless, the judgment was not canceled.
In February 2007, Ms. DeLaSalle and her husband attempted to refinance their home. Respondent, acting as the title attorney for the refinance, discovered Mr. Mims’ still-recorded judgment. He informed the DeLaSalles that he could have the judgment canceled for an additional fee of $600. The DeLaSalles agreed to pay the $600 as part of the refinance closing costs.
Following the closing, respondent contacted Mr. Mims’ attorney, Sam Henry, III, but Mr. Henry informed respondent that Mr. Mims would not voluntarily cancel the judgment, despite it having been discharged in Ms. DeLaSalle’s 2004 bankruptcy.
12Without consulting with the DeLa-Salles, respondent decided to take no action at that time, believing the judgment *920 would prescribe in 2013 due to Mr. Mims’ failure to re-inscribe same. He never informed the DeLaSalles of his intention to wait out the judgment’s prescription and never informed them that they could file pleadings with the bankruptcy court to secure an order canceling the judgment.
Over the next two and a half years, the DeLaSalles made numerous attempts to obtain information from respondent about the cancellation of the judgment, to no avail. In August 2009, Ms. DeLaSalle sent respondent a letter requesting a refund of the $600 fee so she could hire another attorney to obtain a cancellation of the judgment. Respondent failed to respond to this request.
In September 2009, the DeLaSalles filed a disciplinary complaint against respondent. In response to the complaint, respondent indicated that he was “still working” on the matter. He also indicated that he would file pleadings with the bankruptcy court to start proceedings to have the judgment canceled, or he would refund the $600 to the DeLaSalles so they could hire another attorney, whichever they preferred. The DeLaSalles again expressed to the ODC their wish to obtain a refund and hire another attorney. Nevertheless, respondent did not provide the refund.
In March 2010, respondent gave a sworn statement to the ODC, during which he agreed to address the issue of a possible resolution with Ms. DeLaSalle. In April 2010, he wrote to the DeLaSalles, indicating that he could continue trying to cancel the judgment on their behalf or refund the $600 so they could hire another attorney. In response, Ms. DeLaSalle sent respondent a letter requesting the refund. Respondent never provided the refund.
^DISCIPLINARY PROCEEDINGS
In November 2011, the ODC filed formal charges against respondent, alleging that his conduct as set forth above violated the following, provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(f)(5) (failure to refund an unearned fee), and 1.15 (safekeeping property of clients or third persons). Respondent, through counsel, answered the formal charges, denying any misconduct. He also indicated that he placed the $600 at issue in his client trust account. The matter then proceeded to a formal hearing on the merits.

Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee determined that the testimony of the DeLaSalles was credible. They both testified that they had no contact with respondent following the closing in February 2007 until after they filed the disciplinary complaint against him in September 2009. During this time period, they placed numerous calls to his office, none of which were returned. Mr. DeLa-Salle also testified that he attempted to speak with respondent at his office on several occasions. However, he was only able to speak with respondent once, at which time respondent informed him that he had misplaced their file and would get back to them after locating it. Respondent also did not respond to Ms. DeLa-Salle’s letter requesting a refund so she could hire another attorney.
The committee further determined, based on the testimony and evidence, that respondent designated $600 in his client trust account as “segregated for disputed fee” upon receiving the disciplinary complaint. He testified that he would happily return the $600 fee immediately only if the DeLaSalles hired another |4attorney who could seek cancellation of the judgment. *921 Respondent admitted that this concern was, at least in part, self-serving.
After analyzing the testimony and evidence, the committee made the following factual findings:
When respondent accepted the $600 to have Mr. Mims’ judgment canceled, he anticipated a quick resolution via a telephone call to his friend, Mr. Henry. Upon learning that Mr. Mims would not agree to cancel the judgment, respondent was faced with a conflict. He needed to get the judgment canceled, but the only definite way to immediately accomplish this involved re-opening Ms. DeLaSalle’s bankruptcy, the cost of which would exceed the $600 fee. Assuming that the DeLaSalles would not want to pay for further legal services, and fearing for his business relationship with lenders and title insurance companies if the judgment was not canceled, respondent decided to do nothing with the hope that the judgment would prescribe. The DeLaSalles repeatedly indicated their wish to discharge respondent and to receive a refund of the $600 fee. Respondent ignored these requests and failed to offer them the option of the Louisiana State Bar Association’s Fee Dispute Resolution Program. He ultimately indicated he would refund the entire $600 but only if the DeLaSalles hired another attorney to pursue the cancellation of Mr. Mims’ judgment.
Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged, with the exception of Rule 1.15. Specifically, the committee found that respondent violated Rule 1.4 by failing to keep the DeLaSalles apprised of the status of their matter and failing to communicate with them despite their repeated attempts to contact him. Respondent’s failure to communicate .deprived the DeLaSalles of a prompt resolution to their legal problem, resulting in a violation of Rule 1.3. Furthermore, by failing to either immediately refund the unearned fee upon his termination or | .¡suggest resolution of the fee dispute through the Fee Dispute Resolution Program, respondent violated Rule 1.5(f)(5). He also violated Rule 1.5(f)(5) by indicating he would only refund the $600 fee if the DeLaSalles hired another attorney to pursue cancellation of Mr. Mims’ judgment. However, the committee determined that respondent did not violate Rule 1.15 becausé he returned the disputed fee to his client trust account after receiving notice of the DeLaSalle’s disciplinary complaint.
The committee further determined that respondent knowingly and intentionally violated duties owed to his clients. However, the committee questioned whether the DeLaSalles suffered any true harm. At most, assuming that respondent earned none of the fee, the harm to the DeLa-Salles would be limited to the lost use of the $600. As such, the committee determined that the baseline sanction is suspension.
In aggravation, the committee found the following: a prior disciplinary record (2001 diversion), a dishonest or selfish motive, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law (admitted 1984), and indifference to making restitution. In mitigation, the committee found personal or emotional problems,[1] full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, *922 and the remoteness of the prior disciplinary offense.
After further considering case law involving similar misconduct, the committee recommended that respondent be suspended from the practice of law for six months, fully deferred, subject to one year of supervised probation with the [^conditions that he attend the Louisiana State Bar Association’s Ethics School and refund the unearned fee.
Neither respondent nor the ODC filed an objection to the hearing committee’s report and recommendation.

Disciplinary Board Recommendation

After reviewing the record, the disciplinary board determined that the hearing committee’s factual findings are supported by the record and are not manifestly erroneous. The board also determined that the committee correctly applied the Rules of Professional Conduct. Specifically, the board found that respondent violated Rule 1.3 when he, without consulting his clients, took a “wait and see” approach to canceling Mr. Mims’ judgment when Mr. Mims refused to voluntarily cancel same. Respondent violated Rule 1.4 when he failed to return numerous telephone calls from his clients. Respondent also never discussed with his clients their options regarding the judgment or his planned course of action (to do nothing) with respect to its cancellation. The board further found that respondent violated Rule 1.5(f)(5) because the DeLaSalles tried fervently to dismiss respondent and receive a refund of the $600 fee, but respondent ignored their requests. Respondent eventually agreed to refund the entire $600 but only if the DeLaSalles hired another attorney to pursue the cancellation of Mr. Mims’ judgment. The board agreed with the committee that respondent did not violate Rule 1.15 because he designated $600 in his client trust account as “segregated for fee dispute” upon receiving notice of the disciplinary complaint.
The board determined that respondent knowingly violated duties owed to his clients. His conduct caused actual harm to the DeLaSalles by failing to refund the $600 fee so they could hire a new attorney to resolve their legal matter. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the board 17determined that the baseline sanction is suspension. The board adopted the aggravating and mitigating factors found by the committee.
After further considering case law involving similar misconduct, the board recommended that respondent be suspended from the practice of law for six months, fully deferred, subject to one year of supervised probation with the conditions that he attend Ethics School and refund the $600 fee to the DeLaSalles.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
*923 In this matter, respondent was paid $600 to have a judgment canceled due to the fact that the debt was discharged in bankruptcy. The record reflects that, upon realizing it would be more difficult to have the judgment canceled than he originally believed it would be, respondent neglected the matter and failed to communicate with his clients. Respondent also ignored all of his clients’ requests for a refund of the fee. This misconduct amounts to a violation of the Rules of Professional Conduct as found by the hearing committee and the disciplinary board.
1^Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
We find respondent knowingly, and possibly intentionally, violated duties owed to his clients. His actions caused harm to the DeLaSalles in that they were deprived of the use of the $600 while respondent did nothing to move their legal matter forward. The baseline sanction for this type of misconduct is suspension. The record supports the aggravating and mitigating factors found by the committee and the board.
Under all the circumstances, we will adopt the board’s recommended sanction and suspend respondent from the practice of law for six months, fully deferred, subject to one year of supervised probation with the conditions that he attend the Louisiana State Bar Association’s Ethics School and refund the $600 fee to the DeLaSalles.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that M. Randall Donald, Louisiana Bar Roll number 14222, be and he hereby is suspended from the practice of law for six months. This suspension shall be deferred in its entirety, subject to respondent’s successful completion of a one-year period of supervised | nprobation. During the probationary period, respondent shall attend the Louisiana State Bar Association’s Ethics School. It is further ordered that respondent refund the $600 fee to the DeLaSalles within thirty (30) days. The probationary period shall commence from the date respondent, the probation monitor, and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. In April 2012, respondent's wife died suddenly. Although her death occurred after formal charges were filed against respondent, the committee believes it likely had an impact on respondent’s current state of mind, particularly with respect to his refusal to acknowledge the wrongful nature of his conduct.